## AJELLO v. PAN AMERICAN AIRWAYS CORPORATION (DOUGLAS AIRCRAFT CO., Inc., Intervener).

District Court, S. D. New York.

May 13, 1941.

Gaetano Ajello, pro se.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and C. Blake Townsend, both of New York City, of counsel), for defendant Pan American Airways Corporation.

Hoguet, Neary & Campbell, of New York City (Walter H. Free, of New York City, R. Welton Whann, of Los Angeles, Cal., and J. Edwin Coates, of Santa Monica, Cal., of counsel), for intervener.

BYERS, District Judge.

Action for alleged patent infringement. The plaintiff is the patentee named in U. S. Letters Patent No. 1,545,808, granted July 14, 1925, on application filed February 28, 1923.

He presented his own cause at the hearing, his attorney of record having withdrawn.

Claim 8 is in suit: "In an aircraft wing, a braking and lifting surface normally forming a part of the streamline of the wing and connected thereto by means of hinges at one end and sliding connections at the other; said sliding connections arranged for movements in conjunction with an arm pivoted within the nucleus of the wing."

■ The device has never been embodied in an airplane, and consequently its capacity to function rests entirely in argument. This is not conclusive as to validity, but is of great significance on the question of infringement. In the true sense, this is a paper patent. The patentee is an architect and is not shown to have had any engineering or other association with the design or manufacture of airplanes.

■ The specifications recite the object to be "to provide for aircraft and especially for airplanes additional or emergency surfaces to act as resistance or brake means at landing or against flight or fall, or to act as elevators for a quick take off from the ground, and of such a design as to diminish or neutralize, as required, its (sic) force of reaction on its (sic) controls and thus obviate intricate and heavy mechanisms while simultaneously the new mechanism and its resultant force would be applied within the outline (streamline) and nucleus of the part of the aircraft into which they are comprised, be it a wing, a fin, etc., thus imitating the animal.[1] * * *

"A still further object is to provide for aircraft a wing structure having minimum or limited surface area but so devised and controlled as to become, in effect, a multiplane structure, to increase the supporting capacity of the aircraft when necessary."

The patentee says that these objects are accomplished by his provision of "resistance means consisting of two surfaces so connected that both open or close simultaneously and that can be applied on one or more parts of any portion thereof constituting a surface member of the aircraft as desired and at different angles to the longitudinal or the transverse axis of the aircraft * * *."

That is, these added surfaces may open outboard of the wings, or fore and aft.

The remaining provisions of the specifications refer to the 2-figure drawing, identify the numerals thereon and expound the theory that the two surfaces co-operate easily by reason of the impact of the air currents against them when in a position of extension, and that, if preferred, one surface may be larger than the other, but

---

[1] Anonymity complete.

their relationship is constantly parallel; and that in starting, the impact of the air current from the propeller will cause the nose of the airplane to rise.

The drawings depict what may be conveniently visualized as trap doors hinged in the upper and lower surfaces of the wing of an airplane, of equal size and in parallel relation; they are connected by an interior diagonal member, so that the leading edge of the top member, and the trailing edge of the bottom member act in unison, i. e., they open and close together. The top member opens ahead and the bottom member drops fo the rear. Intermediate positions between complete closure and complete opening are possible because the diagonal connecting member is said to be connected to the respective trap doors, at the inner surface of each "through any well known sliding means 5 on rails or tracks 6 secured to the braking surfaces" (i. e. the trap doors).

The connecting member or arm, without which the trap doors could not function, is subject to a vague enough kind of control from some undisclosed center in this language: "It is obvious that arm 4 under such contrary forces (i. e., the impact of the air pressure from the propeller, presumably) can be very easily moved to open or close by a simple lever or any other well known control means."

At the hearing the plaintiff was asked what he deemed to be the invention disclosed in his patent, and he said: "The invention is the obtaining of a small wing area. * * * I was granted the air braking and lifting surface, which means all the forces." Also he testified that, when the open position of these trap doors is maintained, there is a passage or current of air moving between them, i. e., through the resultant opening in the wing.

The position of this opening is to be inferred from the position of the arm which connects the "braking and lifting surfaces", which according to the claim is "pivoted within the nucleus of the wing", i. e., the central part. These sections, then, constitute movable portions of the upper and lower surfaces of the wing, of indeterminate relationship to the entire wing surface, but equidistant from the fore and aft edges, and from the inner and outer extremities.

How these movable surfaces could function at all except in the alternative or fore and aft disposition, is left in complete obscurity, so far as the plaintiff's oral and written exposition of his patent is concerned.

Confining consideration therefore to the latter, it becomes necessary to ascertain whether an airplane equipped with the plaintiff's patented structure, so disposed that the upper surface is opened ahead, and the lower surface is opened astern, in the approximate center of the wing, is infringed by the accused structures named below.

The Pan American Airways Corporation, the defendant, assumes responsibility, for the purposes of this litigation only, of the operation of airplanes, namely Sikorsky models S-42, S-42A, S-42B and S-43; the Douglas models DC2 and DC3; and the Boeing model B-314.

The Douglas Aircraft Company, Inc., the manufacturer of DC2 and DC3, intervened and answered.

These structures all employ wings having a movable trailing edge, i. e., the rear edge of the wing, for part or all of its length, can be moved down to decelerate speed at landing, and to obtain a more abrupt rise at take-off, than would otherwise be possible. The proportion of the width of the wing comprised in the trailing edge is not disclosed in the testimony, but seems to vary according to the model involved.

In no instance is there an upper plane surface in or out of engagement with the wing or the trailing edge, in any position; in none is there an opening through which a current of air may flow, whatever its origin, between the upper and lower surface of the wing, or between the upper and lower members of a structure incorporated into the wing. As to all, the central portion of the wing, the "nucleus" in plaintiff's parlance, is an unbroken and symmetrical surface. Even an untutored observer can sense the importance of this aspect of the contrasting structures.

The mechanical characteristics of the accused structures, in the affected matters, are so completely remote from the disclosure, if any, in the plaintiff's patent, that a decree would have been ordered against him at the close of the hearing, except for a reluctance to yield to what seemed to be entirely obvious, lest there be lurking in the cause something which would come to light upon further study.

The only excuse for the litigation which I have been able to discover, is the fact

that the plaintiff shows a lower plane which, in an extended position, may be urged to be infringed by the drooping wing edge of the accused aircraft. That contention will be seen to be wholly inadmissible, first, because of the central wing position of the plaintiff's lower member, and, secondly, because it is the association of the latter with the upper member which is essential to the alleged functioning of either. He teaches a multiplane structure and discusses the relationship so established to demonstrate the ease of control said to reside in the connecting arm, and the facility with which it can be set in motion, without disclosing the means. The office of the air flow between these surfaces, and through the opening in the wing created by their extension, is not the subject of exposition.

Further reflection upon the plaintiff's presentation discloses that, at most, there should be attributed to him, for present purposes, a belief that he was the first to realize that braking and lifting were desirable (the patents in defendant's case demonstrate the contrary) and that the size of the wings could be reduced if such means could be perfected, and thus the buoyancy residing in large wings could be supplanted by devices rendering that factor superfluous. I should suppose that braking and lifting in this connection are not separate concepts, since each has for its object to oppose the force of gravity, but to accomplish different results. He may believe that, as an observer (he was nothing more) of the progressive understanding in the field of aerodynamics, he should be regarded, in effect, as the patentee of the devices employed in the accused structure. If so, he is mistaken.

His patent must be measured in the terms of its disclosure, which is a nebulous quantity at best, and his charges of infringement require proof, not disputation; that requirement has not been met.

The Sikorsky craft, in the respects affected by this cause, resemble Zimmermann U. S. Letters Patent No. 1,697,674 (filed November 22, 1921, 16 months before plaintiff's) and Page U. S. Letters Patent No. 1,422,616 (granted July 11, 1922 on application filed December 6, 1921) and do not resemble plaintiff's purported structure, or infringe his patent. The conclusion as to the Boeing and Douglas machines is the same.

Whatever the patentable invention of plaintiff's disclosure may be deemed to be, it is not embodied in whole or in part in any of the accused structures.

I seriously doubt the validity of the plaintiff's patent, for lack of invention, and lack of operability, but since he has not had the benefit of professional advocacy in the cause as finally presented, or of testimony as distinguished from his own discourses, I prefer to make no finding on that subject.

There has been a complete failure to prove infringement, and the persuasive evidence is quite to the contrary. The defendant and the intervener may have a decree, with one bill of costs, to be settled with findings, on notice.